**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

In re:

**KEITH'S TREE FARMS,**                          **Chapter 12**

**Debtor.**                          **Case No. 13-71316**

**MEMORANDUM OPINION**

The question this Court must answer is whether to confirm the debtor's chapter 12 plan, and if not, whether to deny leave to amend and dismiss the debtor's case pursuant to section 1208(c) of the Bankruptcy Code.  The debtor filed a chapter 12 plan and three amended chapter 12 plans.  None of the plans has been confirmed.  The two largest creditors and the chapter 12 trustee objected to each plan.  The debtor's two largest secured creditors object to their treatment under the current plan and advocate for dismissal, citing unreasonable delay that is prejudicial to the creditors, under 11 U.S.C. § 1208(c)(1), and the continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, under 11 U.S.C. § 1208(c)(9).  The farm seeks confirmation of its fourth chapter 12 plan over the objections of its creditors, or in the alternative leave to amend in order to file a fifth plan in hopes that it might be confirmed.  One of the creditors has urged this Court to deny any further leave to amend and simply dismiss the case.

As more fully set forth below, the Court denies confirmation of the plan.  Furthermore, the Court denies the debtor leave to amend the plan.  Therefore, and for other cause shown, the Court dismisses the case.

## Findings of Fact & Procedural History

Keith's Tree Farms is purported to be a general partnership organized under Virginia law, owned and run by the Keith Family.[1]  Mr. Curtis Keith and his two sons act as general partners in the business, and Verna Keith, Mr. Keith's wife, serves as secretary and bookkeeper for the operation.[2]

On August 14, 2013, Mr. Keith filed a voluntary petition under chapter 12 of the Bankruptcy Code on behalf of Keith's Tree Farms.[3]  Keith's Tree Farms reported $1,674,148.26 in secured claims, including $1,383,962.68 and $206,114.47 owed to Grayson National Bank and First Community Bank, respectively.[4]

Keith's Tree Farms filed the first chapter 12 plan for reorganization on November 12, 2013.[5]  On December 4, three of Keith's Tree Farms's secured creditors—Grayson National Bank, First Community Bank, and First Bank of Virginia[6]—objected to their treatment under this first chapter 12 plan.[7]  The chapter 12 trustee also objected to the plan, arguing the plan was

---

[1]      The parties dispute whether the debtor is actually a valid partnership as well as whether the partnership properly petitioned for bankruptcy.  *See* Transcript at 19–22, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. July 1, 2014) ECF Doc. No. 130 [hereinafter *Transcript*].  This distinction, however, is inapposite to the Court's ruling today.

[2]      *Id.* at 15, 20, 97.

[3]      *See* Chapter 12 Voluntary Petition, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Aug. 14, 2013) ECF Doc. No. 1.

[4]      *See id.* at 13–14.  Subsequently Grayson National Bank filed proof of claim number 4 in the amount of $1,654,594.85.  First Community Bank filed proof of claim number 7 in the amount of $194,054.38.

[5]      *See* Chapter 12 Plan, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Nov. 12, 2013) ECF Doc. No. 21.

[6]      First Bank of Virginia later withdrew its objection.  *See* Order Withdrawing Objection, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Apr. 7, 2014) ECF Doc. No. 88.

[7]      *See* Objection to Confirmation by Grayson National Bank, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Dec. 4, 2013) ECF Doc. No. 28; Objection to Confirmation by First Community Bank, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Dec. 4, 2013) ECF Doc. No. 32; Objection to Confirmation by First Bank of Virginia, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Dec. 16, 2013) ECF Doc. No. 36.

infeasible; the debtor filed it in bad faith due to inaccurate disclosures and incomplete schedules; and the debtor had not yet filed all tax returns.[8]

After multiple continuances, the Court held the hearing on confirmation of the first chapter 12 plan on March 13, 2014, at which time the Court denied confirmation and directed the debtor to file an amended plan by March 27.[9]

The debtor amended the plan and schedules.  This new plan altered the treatment of the claims of Grayson National Bank and First Community Bank.  Specifically, the new plan proposed to transfer property known as the Patterson Rock Quarry along with the trees on the property to Grayson National Bank for a total credit of $615,000.[10]  The remaining secured claim of Grayson National Bank would be satisfied by payments of $65,903.98 per year for 30 years. The new plan valued the rental real estate securing part of First Community Bank's claim at $30,000.[11]  Once again, Grayson National Bank and First Community Bank filed objections to the plan.[12]

---

[8]     See Trustee's Report and Show Cause, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. Dec. 4, 2013) ECF Doc. No. 33.

[9]     See Docket Entry Denying Confirmation, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. Mar. 13, 2014) ECF Doc. No. 67.

[10]     In the prior plan, the debtor proposed to surrender the Patterson Rock Quarry to Grayson National Bank for a credit of $215,000 yet the debtor proposed to retain the right to timber the property for a fee of $20 per tree. The remaining secured claim would be satisfied by direct payments for a term of fifty-nine months with a balloon payment at the end of sixty months.  See Chapter 12 Plan, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. Nov. 12, 2013) ECF Doc. No. 21 at 1–3.

[11]     The prior plan had valued this collateral at $40,000.  See id.

[12]     See Objection to Confirmation by Grayson National Bank First to Amended Chapter 12 Plan, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. Apr. 24, 2014) ECF Doc. No. 91; Objection to Confirmation by First Community Bank to First Amended Chapter 12 Plan, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. Apr. 24, 2014) ECF Doc. No. 92.

Eight days before the hearing set for confirmation, Keith's Tree Farms filed what it called an "Amended Amended Chapter 12 Plan" ("Second Amended Plan").[13]  One week later, the debtor filed its fourth plan in the case ("Third Amended Plan"), which proposed the same treatment of the secured creditors' claims as the Second Amended Plan, and provided for an IRS claim.[14]

Yet again, Grayson National Bank and First Community Bank objected to their treatment under the Second and Third Amended Plans, citing the debtor's alleged lack of good faith in violation of section 1225(a)(3), the plan's failure to pay present value of all secured claims in violation of section 1225(a)(5), and the plan's lack of feasibility under section 1225(a)(6).[15]

Along with its objection to confirmation, First Community Bank filed a motion to dismiss the case.[16]  The motion asserted cause to dismiss the case based on section 1208(c), due to unreasonable and prejudicial delay to creditors and the continuing loss to the estate and absence of reasonable likelihood of rehabilitation.[17]  On June 5, the Court held a hearing on confirmation of the Third Amended Plan and the motion to dismiss.

---

[13]     See Amended Amended Chapter 12 Plan, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. Apr. 29, 2014) ECF Doc. No. 93.  The debtor filed the Second Amended Plan only eight days prior to the scheduled hearing on confirmation.  Eight days is not sufficient time for objections to the plan.  See Fed. R. Bankr. P. 2002.  The Court therefore held a conference call with the parties to determine if the parties consented to proceed as scheduled on May 8.  On the conference call, counsel for the debtor admitted to having to file yet another plan to account for a claim filed by the IRS.  Accordingly, the Court continued the hearing on confirmation of the plan to June 5, 2014.

[14]     Third Amended Chapter 12 Plan, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. May 6, 2014) ECF Doc. No. 95 [hereinafter Third Amended Plan].

[15]     See Objection to Confirmation by Grayson National Bank, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. May 22, 2014) ECF Doc. No. 102; Objection to Confirmation by First Community Bank, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. May 22, 2014) ECF Doc. No. 103.

[16]     See Motion to Dismiss, In re Keith's Tree Farms, 13-71316 (Bankr. W.D. Va. May 23, 2014) ECF Doc. No. 104.

[17]     Id. at 1.

At the hearing on June 5, the Court heard from three witnesses regarding confirmation and the motion to dismiss—Mr. Keith, as general partner of Keith's Tree Farms; Mrs. Keith, as bookkeeper; and Mr. Tom Gentry, as the account executive for Grayson National Bank on the Keith's Tree Farms account.  The Court first heard from Mr. Keith.

Mr. Keith testified that he and his sons operated Keith's Tree Farms as a general partnership since 1991; however, they had since misplaced the partnership agreement and Mr. Keith had decided to stop accepting a salary from the partnership.[18]  He also repeatedly testified that, although they had fallen behind, he had many years of experience and he always was able to make his payments and honor his obligations as they came due.[19]  Mr. Keith testified that First Community Bank had liens on two "road tractors" and a house that he rented to his immigrant workers.[20]  He testified that the road tractors were worth $60,000 and the rental house was worth $30,000.[21]  Although Mr. Keith valued the rental house at $40,000 in the First Chapter 12 Plan, he reduced its value in the amended plans.[22]   He explained the reduction in his valuation as follows:  "[A]fter going in the house and looking around at stuff, it's worth about $30,000."[23] Accordingly, the debtor proposed to cram down the house to $30,000 and the vehicles to $60,000 and treat the remaining amounts as unsecured deficiency claims.[24]

---

[18]     *Transcript*, *supra* note 1, at 18–19, 75.

[19]     *Id.* at 72, 81, 84, 89, 93.

[20]     *Id.* at 22.

[21]     *Id.*

[22]     *Id.* at 27.

[23]     *Id.*

[24]     *Id.* at 27, 29.

Mr. Keith testified that the partnership intended to surrender the Patterson Rock Quarry, including the trees, to Grayson National Bank for a $615,000 credit.[25]  Mr. Keith testified that the Patterson Rock Quarry contains an inventory of over $2,000,000 worth of trees.[26]  Mr. Keith testified that the bank could sell the trees "wholesale" for $150 per tree and twice that amount for retail.[27]  Notwithstanding these statements on valuation, Keith's Tree Farms only sought to remit the trees for a credit of $400,000 and the real property for a credit of $215,000 to reduce its outstanding debt to Grayson National Bank.[28]  Under the Third Amended Plan, the partnership would make $62,903.98 payments yearly for thirty years directly to Grayson National Bank.[29]

Mr. Keith explained that the partnership had made more money last spring than in the previous years and he expected this trend to continue into the future.[30]  Mr. Keith reported that he had recently attended a trade show, acquired a new customer, and received orders for 5,000 trees.[31]

---

[25]     *Id.* at 33.

[26]     *Id.* at 40.  At this point of the hearing, counsel for Keith's Tree Farms moved to admit into evidence Mr. Keith's inventory and valuation estimates of the trees on the Patterson Rock Quarry.  *Id.* at 45–47.  The secured creditors objected to the admission of this exhibit, arguing it was contrary to the debtor's sworn schedules.  *Id.* at 46. The Court took the objection under advisement.  *Id.* at 47.

The Court overrules the objection and admits Exhibit 9 into evidence.  Although the values included in exhibit are inconsistent with the schedules, such contradictory statements are immaterial to the admissibility of the evidence and, instead, merely undercut the weight of the statements made in the document and in Court.  Under the Federal Rules of Evidence, "[r]elevant evidence is admissible" unless proscribed by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court." Fed. R. Evid. 402.  *See also* Fed. R. Evid. 613(b) (admissible when witness available to explain or deny the prior inconsistent statement) and Fed. R. Evid. 801(d)(1)(A)(admissible for purposes of impeachment).

[27]     *Id.* at 41.

[28]     *Id.* at 48.

[29]     *Id.*

[30]     *Id.* at 53–54.

[31]     *Id.* at 54–55.

On cross examination, Mr. Keith acknowledged Keith's Tree Farms owed Grayson National Bank $8,881.77 for its unauthorized use of cash collateral and currently it did not have the funds to cure this debt.[32]  Furthermore, he could not explain the differences in value of the Patterson Rock Quarry from the first to the second iteration of Schedule A, which increased from $50,500 to $215,000 declaring, "I must have been drunk or under drugs or something on account of land in Wythe County is $3,000 an acre."[33]  When asked where on the schedules the millions of dollars' worth of trees appeared, Mr. Keith responded, "at the time, I didn't know what we was really doing."[34]  Mr. Keith also testified that although they had not sold any trees from the Patterson Rock Quarry for about a year, he believed the bank could realize around $130 profit per tree, if it sought to sell them individually.[35]

Turning to the Third Amended Plan, Mr. Keith testified that he believed it was feasible and reiterated that he always met his obligations.[36]  Mr. Keith acknowledged the plan could take thirty years to complete, at which time he will be over 90-years-old.[37]  He contended, however, that because his two sons, who are in their forties, are involved in the partnership, his health and longevity should not be a concern.[38]

---

[32]    *Id.* at 59.

[33]    *Id.* at 61–62.

[34]    *Id.* at 65.

[35]    *Id.* at 69–70.

[36]    *Id.* at 72, 81, 82, 84, 89, 93.

[37]    Mr. Keith testified that on June 23, 2014, he would turn 64 years of age.  *Id.* at 39.

[38]    *Id.* at 74.

Counsel for Grayson National Bank then confronted Mr. Keith with the debtor's income and expense projections, which Mr. Keith had attached to the Third Amended Plan.[39]  That attachment, prepared by Mrs. Keith, showed anticipated income of $85,000 and estimated expenses of $82,700 per month.[40]  The operating report for April 2014, however, showed expenses of $129,163.79—nearly $50,000 more than estimated.[41]  Moreover, the income and expense projections only included the payments to Grayson National Bank and did not include payments to the trustee or other creditors.[42]

Next, counsel for First Community Bank questioned Mr. Keith about its collateral. Counsel probed into the debtor's current valuation of the rental property pledged to First Community Bank as collateral.  Mr. Keith admitted that he is not a real estate appraiser and his valuation was merely an estimate, but he testified that after he toured the property, he realized it was not in the condition he originally thought it was.[43]  Regardless, when pressed, he estimated the value of the property to be "between $30,000 and $40,000."[44]

After Mr. Keith's examination ended, the debtor called Mrs. Keith to testify as bookkeeper of Keith's Tree Farms.  According to her testimony and Exhibit 5, the partnership had revenue of $106,000 for the month of May.[45]  Mrs. Keith attested that, except for a $300

---

[39]     *See* Attachment 1 to Third Amended Plan, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. May 6, 2014) ECF Doc. No. 95-1.

[40]     *Id.* at 1.

[41]     *Transcript*, *supra* note 1, at 79–81.

[42]     *Id.* at 79.

[43]     *Id.* at 91.

[44]     *Id.*

[45]     *Id.* at 98; Exhibit 5, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. June 4, 2014) ECF Doc. No. 114.

check she had to pick up from the post office, that amount accurately reflected the revenues of Keith's Tree Farms for May 2014.[46]

Mrs. Keith also prepared the income and expense projections for the coming year.[47] In explaining the document, she testified:

> I worked for about a week or two looking up past records and trying to figure out what we had coming up in the future and evened it all out, estimated it, and went by past figures and I kept a little bit on the low side, but everything is going up now and stuff, so hopefully it'll be better.[48]

The document suggested the debtor could make its payments and be profitable; however, as the secured creditors later pointed it, the projections were not entirely reliable.

On cross examination, the secured creditors attacked the validity and trustworthiness of Exhibit 6, as well as Mrs. Keith's reliability and acumen as a bookkeeper. On cross, Mrs. Keith admitted that the numbers she had used in Exhibit 6 were wrong, because she only included one week's worth of salaries[49] in her monthly expenses.[50] She overlooked the fact that the cash flow projection report she prepared did not accurately reflect the expenses for the partners' salaries and it did not reflect any continuity from month to month.[51] Later, on cross examination, Mrs.

---

[46]      *Transcript, supra* note 1, at 98.

[47]      *See* Exhibit 6, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. June 4, 2014) ECF Doc. No. 115 [hereinafter *Exhibit 6*].

[48]      *Transcript, supra* note 1, at 99.

[49]      Mrs. Keith listed the weekly salaries of $800 for each of the sons and $400 for Mr. Keith; however, she did not explain why she still listed Mr. Keith's salary as an expense, when he earlier testified he no longer accepted one. *See id.* at 75.

[50]      *Id.* at 107.

[51]      *See generally Exhibit 6*, *supra* note 48.

Keith confessed that she had never prepared projections like this before, but she had researched various similar examples and believed her projections were accurate.[52]

After Mrs. Keith's testimony, Grayson National Bank called its witness—Mr. Tom Gentry.  Mr. Gentry testified that he has worked as a bank executive in the Twin County area with Grayson National Bank and he has been involved with the Keith's Tree Farms credit facility.[53]  Mr. Gentry explained that he toured the Patterson Rock Quarry and assessed the condition of the trees thereon only a few months prior to the hearing.[54]  He testified that while on the property he noticed some discoloration of needles and overgrowth of weeds.[55]

Mr. Gentry also ran various amortizations over thirty years at differing interest rates, compounded daily, using the same software and methodology Grayson National Bank uses.[56] Based on these calculations, Mr. Gentry determined that to pay the current balance of $1,654,594 at the contract rate of interest of 6.25%, Keith's Tree Farms would have to make yearly payments of $123,495.46 over the thirty years to satisfy the loan.[57]  Likewise, at the proposed rate of interest under the plan of 4.75%, the debtor would have to make payments of $104,626.97 a year for thirty years to pay off the debt.[58]  Finally, Mr. Gentry ran the same amortizations after applying the proposed $615,000 credit for the surrender of the Patterson Rock Quarry against the

---

[52]     *Transcript*, *supra* note 1, at 115, 118–19.

[53]     *Id.* at 122–23.

[54]     *Id.* at 125.

[55]     *Id.*

[56]     *Id.* at 132.

[57]     *Id.* at 132.

[58]     *Id.* at 132–33.

debt owed to the bank.[59]  According to these calculations, at 6.25% interest, Keith's Tree Farms

would have to pay $77,593.14 per year to satisfy the debt, and at 4.75% interest, it would have to

pay $65,737.92 per year.[60]

Finally, Mr. Gentry testified that in his experience in the banking industry, a thirty-year

amortization for this type of agro-commercial loan is not practicable.[61]  Instead, Mr. Gentry

explained that within the past five years, most banks in the area have only offered fifteen- to

twenty-year loans with a balloon payment and refinance about every three to five years.[62]

On cross examination, counsel for Keith's Tree Farms questioned Mr. Gentry about

whether he credited the $52,500 payment Keith's Tree Farms had already made under the plan to

the outstanding balance owed to Grayson National Bank in his amortization calculations.[63]

Ultimately, Mr. Gentry responded that his calculations were after crediting the prior payment;

however, the record is not entirely clear on this point.[64]

At the conclusion of the hearing, the Court took the matter under advisement.  The debtor

and the secured creditors submitted briefs in support of their respective positions.[65]

---

[59]    *Id.* at 133.

[60]    *Id.*

[61]    *Id.* at 134.

[62]    *Id.* at 135–37. Although Mr. Gentry was not a witness for First Community Bank, counsel for the bank took his presence as an opportunity to conduct his own brief direct examination.  *Id.* at 137–40.  Briefly, Mr. Gentry testified that most agricultural loans follow the three-to-five year balloon pattern and a twenty-seven year loan was also unreasonable.  *Id.* at 140.

[63]    *Id.* at 141–43.

[64]    *Id*. at 142–43.

[65]    Keith's Tree Farms filed its memorandum in support on June 26, 2014.  Memorandum in Support of Confirmation, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. June 26, 2014) ECF Doc. No. 127 [hereinafter *Memorandum in Support*].  The secured creditors filed their memoranda in opposition on July 10.  Memorandum Opposing Confirmation by Grayson National Bank, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. July 10, 2014) ECF Doc. No. 131 [hereinafter *Grayson Opposition*]; Memorandum Opposing Confirmation by First

## CONCLUSIONS OF LAW AND ANALYSIS

### A.  Confirmation

Bankruptcy Code section 1225 delineates the criteria a plan must meet for a court to

confirm it.  Subsection 1225(a) reads, in part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
> . . .
>> (3) the plan has been proposed in good faith and not by any means forbidden by
>> law;
>> (4) the value ,as of the effective date of the plan, of property to be distributed
>> under the plan on account of each allowed unsecured claim is not less than the
>> amount that would be paid on such claim if the estate of the debtor were
>> liquidated under chapter 7 of this title on such date;
>> (5) with respect to each allowed secured claim provided for by the plan—
>>> (A) the holder of such claim has accepted the plan;
>>> (B)(i) the plan provides that the holder of such claim retain the lien
>>> securing such claim; and
>>> (ii) the value, as of the effective date of the plan, of property to be
>>> distributed by the trustee or the debtor under the plan on account of such
>>> claim is not less than the allowed amount of such claim; or
>>> (C) the debtor surrenders the property securing such claim to such holder;
>> (6) the debtor will be able to make all payments under the plan and to comply
>> with the plan . . . .

11 U.S.C. § 1225(a)(3)–(6).  Furthermore, if any creditor calls into question any element

required for confirmation, it is the debtor's burden to prove compliance therewith.  *In re Brown*,

244 B.R. 603, 607 (Bankr. W.D. Va. 2000); *In re Tofsrud*, 230 B.R. 862, 872 (Bankr. D. N.D.

1999).

Grayson National Bank and First Community Bank assert that the Court cannot confirm

the plan, because it proposes an unreasonably low interest rate; is not proposed in good faith; is

infeasible; proposes to amortize the payments over a period that is not commercially reasonable

---

Community Bank, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. July 10, 2014) ECF Doc. No. 132
[hereinafter *First Community Opposition*].

or permitted by the Code; and unfairly discriminates among creditors.[66]  Conversely, the debtor

contests each of these points and argues that the Court may confirm the plan, and if not, it should

be afforded another opportunity to amend the plan.[67]  The Court will consider first the arguments

regarding feasibility and the treatment of the secured claims.

1.  Feasibility

Section 1225(a)(6) of the Code requires the proposed chapter 12 plan to be one under

which "the debtor will be able to make all payments"—i.e., the plan must be feasible.  The

Fourth Circuit has not defined a test for feasibility; however, courts within the Fourth Circuit

consider whether the debtor will be able to comply with the terms of the plan based on the

debtor's historical performance and current condition of the debtor's business.  *See Farmers*

*Home Admin. v. Rape (In re Rape)*, 104 B.R. 741, 748–49 (W.D.N.C. 1989).  "Sincerity,

honesty, and willingness are not sufficient to make the plan feasible, and neither are any

visionary promises.  The test is whether the things which are to be done after confirmation can be

done as a practical matter under the facts."  *Id.* at 749 (quoting *Clarkson v. Cooke Sales & Serv.*

*Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985)).

Such a determination is difficult, as "[f]easibility is never certain, particularly in farm

situations."  *Id.* at 748 (quoting *In re Kloberdanz*, 83 B.R. 767, 773 (Bankr. D. Colo. 1988)).

Nevertheless, the ultimate burden of establishing feasibility, as with all elements of confirmation,

rests on the debtor.  *Tofsrud*, 230 B.R. at 872.  Accordingly, the debtor must persuade the court

that "it is probable, not merely possible or hopeful, that the Debtors can actually pay the

restructured debt and perform all obligations of the plan."  *Rape*, 104 B.R. at 749 (quoting

*Clarkson*, 767 F.2d at 420). In considering the evidence, "the court should give the Chapter 12

---

[66]     *See generally Grayson Opposition*, *supra* note 66; *First Community Opposition*, *supra* note 66.

[67]     *See generally Memorandum in Support*, *supra* note 66.

debtor the benefit of the doubt regarding the issue of feasibility when the debtor's plan projections use reasonable data in light of the current economic climate." *In re Hughes*, No. 06-80219, 2006 WL 2620438, at *3 (Bankr. M.D.N.C. Sept. 11, 2006).

The debtor argues that its evidence is sufficient proof of feasibility. The debtor's evidence consists of the testimony of Mr. Keith as to the state of the farming operation; the testimony of Mrs. Keith regarding the cash flow projections; and the debtor's payment history supporting payments to chapter 12 trustee, which were made prior to confirmation.[68] The debtor contends, based on this evidence, "that it has provided sufficient proof that its cash flow projections are feasible, and so the payments required under the plan are also feasible."[69]

Conversely, Grayson National Bank identified mistakes in the reports supplied by Mrs. Keith that caused Mrs. Keith to understate the future expenses and overestimate the future receipts.[70] As an example, the debtor's "Business Income and Expenses" projected $85,000 in monthly income and $82,700 in monthly expenses, but the debtor actually posted a $35,805.92 *loss* for the month of April 2014.[71] Grayson National Bank contends that such a gross difference exists because the debtor failed to include the proper amount for taxes, tags and tolls for the trucks, and full utility expenses, as suggested by the 2012 tax return.[72]

Similarly, First Community Bank argues that the evidence presented at trial is inadequate to support a showing of feasibility, citing the errors with Mrs. Keith's cash flow and expense

---

[68]      The parties do not contest that the debtor has made some payments to the chapter 12 trustee.

[69]      *Memorandum in Support*, *supra* note 66, at 8.

[70]      *Grayson Opposition*, *supra* note 66, at 4; *see also Exhibit 6*, *supra* note 48; *Transcript*, *supra* note 1, at 104–14.

[71]      *Transcript*, *supra* note 1, at 106.

[72]      *Id.* at 5. Keith's Tree Farms has not yet provided the Court with its 2013 tax return, so the 2012 return contains the most recent information regarding its business expenses. *Id.*

projections.[73]  The bank also contests Mr. Keith's statements on valuation of the trees on the

property.  Mr. Keith testified there were millions of dollars' worth of trees on the Patterson Rock

Quarry alone, based on his own inventory of the property; however, counsel for the bank argues

that Mr. Keith or the partnership never disclosed such amounts as assets of the estate and that it

is unlikely Mr. Keith was actually able to perform such an inventory, due to his health and

mobility limitations.[74]

      After considering the evidence and argument, the Court concludes that Keith's Tree

Farms has not carried its burden in proving feasibility.  A debtor must at least support its

assertion of feasibility with "reasonable data" and projections.  *See Hughes*, 2006 WL 2620438,

at *3.  Here, the only evidence of feasibility is Exhibit 6 and Mr. Keith's testimony.  As

explained above, Exhibit 6 contained several mistakes, rendering it insufficient to permit the

Court to conclude that the financial projections contained within the Exhibit are more likely true

than not.  At the hearing, Mrs. Keith admitted she only included one-week's worth of salaries for

each month.[75]  Although Mrs. Keith suggested the error only affected the first column, it appears

to the Court that each month suffers from the same incorrect salary calculation.[76]  In fact, the

document shows no continuity between the months; for example, the month of May indicates an

ending cash-on-hand amount of $3,580, but June begins with a cash balance of $24,980.[77]  The

farm provided no explanation for the origin of the additional $21,400, but it seems every month

---

[73]     *First Community Opposition*, *supra* note 66, at 8.

[74]     *Id.* at 8–9.

[75]     *Transcript*, *supra* note 1, at 107.

[76]     *See generally Exhibit 6*, *supra* note 48.

[77]     *See id.* at 1.

suffers from the same infirmity.[78]  Even if the Court were to consider Exhibit 6 instructive, it

shows the year ending with a positive net cash balance of $39,240;[79] however, according to the

Court's arithmetic, it appears the debtor has omitted $54,000 worth of salary payments alone

over this span of eight months.  Thus, even taking Keith's Tree Farms's projections in the light

most favorable to its position, the plan is not feasible.[80]  "[I]t is certainly true that if the most

optimistic view of the debtors' economic future, based on the debtors' own projections, shows

that the debtors' projected income would be insufficient to make all of the plan payments in the

first year, confirmation of the Plan must be denied."  *Rape*, 104 B.R. at 749 (internal citations

omitted).

Similarly, the Court finds Mr. Keith's testimony about the value of the trees

unpersuasive.  Mr. Keith testified there was millions of dollars' worth of trees on the Patterson

Rock Quarry alone.[81]  Mr. Keith did not explain why, if this assertion were true, Keith's Tree

Farms neither disclosed such a vast amount of assets on its schedules, nor sought more than

merely $400,000 in credit for the trees in remitting the property to Grayson National Bank.  In

fact, according to Mr. Keith's testimony, when the partnership was trying to sell the property on

the market, it was asking a price of $250,000 for it.[82]  It seems unlikely the debtor would market

property for such a small fraction of its alleged actual value.  The Court finds that the testimony

in support of the debtor's valuation is not sufficiently reliable for the Court to conclude that the

---

[78]      *Transcript*, *supra* note 1, at 110; *Exhibit 6*, *supra* note 48.

[79]      *See Exhibit 6*, *supra* note 48, at 2.

[80]      Furthermore, even assuming Mr. Keith would not accept a salary from the partnership, removing his $400 per week from the calculation still shows Exhibit 6 failing to account for $43,200, which is more than the $39,240 year-end cash balance.

[81]      *Transcript*, *supra* note 1, at 40.

[82]      *Id.* at 63.

figures reported are accurate.  Instead, the estimates seem to be rooted purely in optimism rather than fact.

Ultimately, Keith's Tree Farms has failed to carry its burden in proving the plan is feasible.  The evidence of future income and expense predictions has material defects that deprive it of credibility, and the testimony regarding the value of assets seems to be unreasonably optimistic.

2.   Treatment of Secured Creditors

Under section 1225(a)(5), a court may not confirm a chapter 12 plan without each secured creditor:  (1) accepting the plan; (2)(a) retaining its lien and (b) receiving the full value of the allowed claim as of the date of petition; or (3) receiving the property securing its allowed claim via surrender.  *See* 11 U.S.C. § 1225(a)(5).  Thus, when a debtor proposes to retain property pledged to a creditor as collateral, but the creditor does not accept its treatment under the plan, the plan must allow the creditor to retain its lien on the collateral and pay the creditor's allowed secured claim in full.  *See id.* at 1225(a)(5)(B)(i)–(ii).

In this case, Grayson National Bank objected to the proposed credit the debtor sought under the plan for the surrender of the Patterson Rock Quarry and asserted that plan failed to provide adequate disbursements to pay the bank's entire secured claim in full.[83]  Grayson National Bank also contended the interest rate provided in the plan fails to pay it the present value of its secured claims.[84]  Similarly, First Community Bank objected to the valuation

---

[83]      *Grayson Opposition*, *supra* note 66, at 10–12.

[84]      *Id.* at 9.

assigned to the rental property pledged to it as collateral and, in particular, the debtor's recent, lower valuation of that property.[85]

The Court believes the plan cannot be confirmed for failure to comply with section 1225(a)(5)(B). At the hearing on June 5, Keith's Tree Farms offered no evidence to support the valuation of the rental property securing First Community Bank's loan, except for Mr. Keith's testimony. While testifying, however, when questioned by counsel for First Community Bank as to his opinion of the value of the property, Mr. Keith testified, "[w]ell, I'd say it's between $30,000 and $40,000."[86] The Court is not persuaded that this uncertain, inconsistent opinion on valuation is sufficient to carry the debtor's burden of proving the collateral's value.

Similarly, regarding Grayson National Bank's claim, Mr. Gentry testified, after running various amortizations over a thirty-year period and after crediting $615,000 to the outstanding debt, the debtor would have to make yearly payments of $65,737.92 to fully satisfy the debt.[87] The Third Amended Plan, however, only proposes to pay Grayson National Bank $62,903.98 per year.[88] Conversely, the debtor provided no evidence to contest Mr. Gentry's testimony regarding the amortizations he performed.

Keith's Tree Farms bears the burden of proving the plan provides payments to satisfy the value of the allowed secured claims. With only the testimony of one witness, who openly admitted to basing his valuation solely on his opinion and then wavering on his valuation, coupled with the lack of evidence in support of the debtor's own amortizations or in opposition to the creditor's evidence disputing the debtor's figures, the Court concludes the Keith's Tree

---

[85] *First Community Opposition, supra* note 66, at 10–11.

[86] *Transcript, supra* note 1, at 91.

[87] *Id.* at 133.

[88] *Third Amended Plan, supra* note 14, at 2.

Farms has failed to carry its burden to prove the value of the secured claim or that the proposed payments will satisfy the allowed secured claim.

Even if the debtor's valuation is sufficient, however, this plan may not comply with section 1225(a)(5)(B). Both creditors also objected to the commercial reasonableness of the Third Amended Plan, based on the duration of the proposed plan. Included within the requirement of section 1225(a)(5)(B) that secured creditors be paid their allowed claims in full is the requirement that the repayment term be "commercially reasonable." *See, e.g.*, *In re Standley*, No. 11-62373-12, 2013 WL 1191261, at *5 (Bankr. D. Mont. Mar. 22, 2013) (considering period of future payment stream as a risk factor in setting the reasonable interest rate); *In re Torelli*, 338 B.R. 390, 397 (Bankr. E.D. Ark. 2006) ("[T]he Debtor's plan is not confirmable because the 20-year repayment period [in this case] does not conform to section 1225(a)(5). While the Code does not specifically limit the repayment period, the present value and feasibility provisions imply such limits."); *In re Rose*, 135 B.R. 603, 606 (Bankr. N.D. Ind. 1991) ("In determining the maximum acceptable length of time for extending a debtor's obligations to a secured creditor under a plan, courts have required debtors to support their proposals to lengthen the time for repaying obligations by presenting 'evidence of reasonableness, customary lender practices, [and] market standards' in addition to showing that their proposal provides the secured creditors with the mathematical present value of their claims.") (quoting *In re Koch*, 131 B.R. 128, 132 (Bankr. N.D. Iowa 1991)).

Furthermore, *Wells Fargo Financial Leasing Inc. v. Grigsby* supports the proposition that the market is not the only consideration in determining reasonableness of the term of repayment. No. 13-VC 1821-WMA, 2014 WL 117262 (N.D. Ala. Jan. 10, 2014). The court in *Grigsby* suggested courts should consider not only the market but also "the type of property, the debtors'

particular circumstances, the length of the underlying note, and a general lenience in allowing family farmers the maximum time for repayment." *Id.* at *4. Relying on this authority, counsel for Keith's Tree Farms argued the proposed term under the plan was reasonable and authorized by the Code.[89]

Conversely, both of the secured creditors' counsel cited Mr. Gentry's testimony as the only evidence of commercial reasonableness on the record.[90] Moreover, counsel for Grayson National Bank argued Mr. Keith's age and health raises concerns about whether he will be able to keep up the required pace to complete a plan that proposes to make payments for thirty years.[91] Counsel for First Community Bank also argued such an extension of term is not reasonable based on the terms of the underlying note with First Community Bank, which was for only three years.[92] In the present case, the Court concludes that the time periods proposed in the Third Amended Plan are unreasonable after considering certain factors.

The debtor suggests that the appropriate factors to consider are: the type of property, the debtor's circumstances, the length of the underlying note, and the general lenience to chapter 12 debtors. The only factor supporting the debtor's position that the term is reasonable is the general axiom of leniency. First, although some of the collateral securing the note is real estate, a sizeable portion of it is also personal property and the tree inventory on the real estate. Extending a loan term over thirty years on such property that depreciates rapidly, may be sold,

---

[89]      *Memorandum in Support*, *supra* note 66, at 10–11.

[90]      *See Grayson Opposition*, *supra* note 66, at 10; *First Community Opposition*, *supra* note 66, at 10.

[91]      *Grayson Opposition*, *supra* note 66, at 9.

[92]      *First Community Opposition*, *supra* note 66, at 10.

and/or may become obsolete is unreasonable.[93]   Second, Keith's Tree Farms's general financial condition is not sound, and Mr. Keith's longevity is not guaranteed.[94]   Third, the underlying notes are of varying lengths, but no note had a term of more than three years.[95]   Finally, Mr. Gentry testified that in today's economic landscape, banks would not make these types of loans over such a long term without a balloon.[96]

Conversely, the debtor has not offered any evidence to suggest this term is reasonable, does not prejudice creditors, or ensures all secured creditors are paid their allowed claims in full. Counsel for Keith's Tree Farms presented no witness, expert or lay, to testify to what would constitute a "reasonable" term for this type of loan in the current market and instead only sought to elicit from Mr. Gentry the fact that banks do offer certain mortgages with thirty-year amortizations.   To this point, however, Mr. Gentry explained that banks offer such loans only in the consumer, residential context, rather than for agro-commercial loans.[97]   Accordingly, the Court does not believe Keith's Tree Farms has carried its burden in proving the reasonableness

---

[93]      Commercial reasonableness, and especially reasonableness of a proposed plan's duration, is a component of a reasonable interest rate.  The United States Supreme Court in its decision of *Till v. SCS Credit Corp*. 508 U.S. 464 (1993) considered a reasonable interest rate for payment of an allowed claim secured by personal property in the chapter 13 context.  The Court found that 200 to 300 basis points above the prime rate should be sufficient.   An interest rate of 200 to 300 basis points above the prime rate might be sufficient over the term of a sixty-month chapter 13 plan; however, over a thirty-year chapter 12 plan, a higher interest rate may be necessary.  In the debtor's Third Amended Plan, the farm sought to reject the contract rate of interest and extend the plan over a term of up to thirty years at an interest rate of 150 to 175 basis points above prime but below the contract rate of interest. Although the Court acknowledges such an interest rate may be legally sound, in this case it is unreasonable. *See also In re Torelli*, 338 B.R. 390, 396 (Bankr. E.D. Ark. 2006(explaining *Till* in the chapter 12 context and noting the importance of considering: circumstances of the estate, nature of the security, duration and feasibility of the plan in determining interest rate).

[94]      Furthermore, according to the testimony, Keith's Tree Farms began having financial difficulties when Mr. Keith had to take a leave of absence, after being diagnosed with cancer, and left his sons in charge.  *Transcript*, *supra* note 1, at 76–77.

[95]      *See* Claim 4-1 and Supporting Documentation, *In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Oct. 16, 2013); Claim 7-1 and Supporting Documentation*, In re Keith's Tree Farms*, 13-71316 (Bankr. W.D. Va. Dec. 12, 2013).

[96]      *Transcript*, *supra* note 1, at 135–38.

[97]      *Id.* at 144.

of the Third Amended Plan's proposed term and, accordingly, has not demonstrated full compliance with the requirements of section 1225(a)(5)(B).

The debtor simply has failed to carry its burden in proving the plan complies with the requirements for confirmation. The Court therefore sustains the objections to confirmation on the grounds that the plan is not feasible and does not provide to secured creditors payments to satisfy the present value of their allowed secured claims.

## B.  Leave to Amend

For the reasons stated above, the Court denies confirmation of the Third Amended Plan.[98] The Court also denies leave to amend and file a new plan.

Section 1208(c)(5) of the Bankruptcy Code authorizes the Court to dismiss the case if confirmation is denied and leave to amend is denied. *See* 11 U.S.C. § 1208(c)(5).  Although no courts from within the Fourth Circuit have interpreted this provision, courts in other circuits have done so.  In *In re Luchenbill*, the bankruptcy court decided that although reorganization was possible, cause existed to deny leave to amend, because the case had been pending for over a year; the debtor had proposed five un-confirmable plans; and the debtor had filed the plans in bad faith. 112 B.R. 204, 219 (Bankr. E.D. Mich. 1990).  The court held that although the debtor had preserved the estate's assets adequately, the case should be dismissed. *Id.*

Here, Keith's Tree Farms filed its first plan in November 2013.  Since then, Keith's Tree Farms has proposed three subsequent plans, none of which have been confirmable.  A successful confirmation seems unlikely at this point, considering the consistent objections to confirmation, lack of evidence sufficient to overcome the objections, and the inability of the farm and its creditors to reach agreement on any aspect of the plan.  If there is no reasonable likelihood of

---

[98]        Because the Court concludes that the plan does not meet the requirements of section 1225(a)(5) and (6), the Court need not address the objection to confirmation under section 1225(a)(3) for lack of good faith.

reorganization, requests for additional time should be denied.  A debtor's request for additional time for filing further plans cannot be used as a way to prolong its protection under the Bankruptcy Code when there is no reasonable likelihood of reorganization.  *See In re Pretzer*, 96 B.R. 790, 793–74 (Bankr. N.D. Ohio 1989); *see also In re Michels*, 301 B.R. 9, 18 (Bankr. N.D. Iowa 2003)(The court declined to permit leave to amend and dismissed chapter 12 case after multiple flawed non-confirmable plans).  Keith's Tree Farms has proposed four unsuccessful plans.  The Court concludes the farm has failed to show any reasonable likelihood of reorganization.  Accordingly, the Court does not believe authorizing additional time to file a fourth amended plan is in the best interest of creditors, as such a plan would suffer from the same infirmities as the Third Amended Plan.  Authorizing leave to amend would be fruitless.  The Court, therefore, denies leave to amend.

### C.  First Community Bank's Motion to Dismiss

First Community Bank also moved the Court to dismiss this case.[99]  In the motion, First Community Bank cited section 1208(c)(1), arguing Keith's Tree Farms's actions in this case have resulted in unreasonable and prejudicial delays to the creditors, as well as section 1208(c)(9), asserting there has been a continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation.[100]

Unreasonable delay is not defined by the Bankruptcy Code, but according to case law, unreasonable delays can result from failure to timely file documents, failure to file a confirmable plan, failure to file a modified plan, or failure to perform under a confirmed plan.  *In re French*, 139 B.R. 476, 476 (Bankr. D.S.D. 1992).  Similarly, gross mismanagement can be demonstrated by failure to provide accurate financial information and failure to provide insurance on collateral.

---

[99]     *See* Motion to Dismiss, *In re Keith's Tree Farms*, 13-71316 (W.D. Va. May 23, 2014) ECF Doc. No. 104.

[100]    *Id.* at 1.

*In re Pertuset*, 492 B.R. 232, 252 (Bankr. S.D. Ohio 2012), *aff'd*, 485 B.R. 478 (B.A.P. 6th Cir.

2012).

As in *Pertuset*, the inconsistency of Keith's Tree Farms's financial information provided

to the Court, along with the unreliable testimony at the June 5 hearing, raises serious concerns

about the validity of the information submitted to the Court.  The debtor has not provided an

accurate picture of the debtor's obligations and the status of the farm's current operations.

Furthermore, the Third Amended Plan is not significantly different from prior plans and the

debtor does not appear to be in a position to achieve a confirmable plan in the near future.  Keith

Tree Farms's inability to file a confirmable plan contributes to the unreasonable delay.  *See*

*French*, 139 B.R. at 476.  The inaccurate financial information and the debtor's inability to file a

confirmable plan, amount to unreasonable delay that is prejudicial to creditors.  *See* 11 U.S.C. §

1208(c)(1).  Furthermore, the financial statements provided by the debtor do not show it can be

successful based on its current and projected income.  *See In re Strickland*, 12-07110-DD, 2013

WL 865542, at *5 (Bankr. D.S.C. Mar. 7, 2013) ("Therefore, the Court concludes that dismissal

is appropriate because Debtor's business endeavors are not sufficiently profitable to allow

Debtor to propose a feasible plan or complete a plan by making the necessary payments for the

five-year period Debtor proposes."); *accord, In re Weber*, 297 B.R. 567, 572 (Bankr. N.D. Iowa

2003)(The court dismissed the chapter 12 case concluding that filing four infeasible plans that

could not be confirmed showed unreasonable delay prejudicial to creditors).

These facts described above demonstrate cause to dismiss this case.  Based on cause

shown and this Court's denial of confirmation and denial of leave to amend the plan, this case

shall be dismissed.

CONCLUSION

The Court **DENIES** confirmation of Keith's Tree Farms's Third Amended Plan and

**DENIES** leave to amend the plan further.  Ultimately, the Court cannot confirm Keith's Tree

Farms's Third Amended Plan over the objections of Grayson National Bank and First

Community Bank.  The Court finds that the plan fails to meet the requirements of section

1225(a)(5) and (a)(6).  The plan is not feasible based on the scant and unreliable information

provided to the Court by the debtor and does not pay each secured creditor the allowed amount

of its secured claims in full.

Furthermore, the Court declines to allow Keith's Tree Farms leave to amend its plan for a

fourth time.  The Court concludes that affording the farm with another opportunity to amend its

plan is not in the best interest of the creditors and would be futile.  As mentioned above, the

Court finds that the debtor cannot afford to make the payments proposed in the current plan.  The

Court also determines that the term is not commercially reasonable at the proposed interest rate.

Another plan with a shorter term or higher interest rate would require even higher payments,

which the debtor would not be able to afford based on the evidence shown in this case.  The

Court concludes reorganization for Keith's Tree Farms is objectively futile.  Accordingly, the

Court denies confirmation of the Third Amended Plan and denies leave to amend.

The Court will contemporaneously issue an order consistent with the findings and ruling

of this opinion.

Date Entered:  October 3, 2014

_Rebecca B Connelly_
Rebecca B. Connelly
United States Bankruptcy Judge

25